IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RONALD PENSE                                               PLAINTIFF

vs.                     Case No. 16-5275

ALLY FINANCIAL, INC., previously
known as GMAC, INC., and
EQUIFAX INFORMATION SERVICES, LLC          DEFENDANTS

## COMPLAINT AND JURY DEMAND

Comes now the Plaintiff Ronald Pense for his Complaint and Jury Demand against Defendants, Ally Financial Inc., previously known as GMAC, Inc., and Equifax Information Services, LLC, and states:

## PARTIES

1. Plaintiff, Ronald Pense, resides in Washington County, Arkansas, which is within the district and division of this Court. Plaintiff is a consumer as defined by Section 1681a(c) of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* (the "FCRA").

2. Ally Financial Inc. ("Ally"), previously known as GMAC, Inc., is a U.S. bank holding company headquartered in Detroit, Michigan. The company provides a range of financial services including auto financing, corporate financing,

insurance, and online banking. Ally is one of the top auto lenders in the U.S. by volume. Ally is also a "furnisher" of credit information as that term is defined by the FCRA.

3. Equifax Information Services, LLC ("Equifax") regularly engages in the business of assembling, evaluating, and dispersing information concerning the credit histories of consumers to furnish consumer reports, as defined by Section 1681a(d) of the FCRA, to third parties. Equifax provides such consumer credit reports to third-party subscribers for monetary compensation. Equifax is a consumer reporting agency as defined by Section 1681a(f) and is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by Section 1681a(p).

## JURISDICTION

4. This lawsuit is brought under the FCRA and presents a federal question. Therefore, jurisdiction arises under 28 U.S.C § 1331 and 15 U.S.C § 1681, *et seq.*

5. Venue is proper within this district and division under 15 U.S.C. § 1681p and 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### *Summary of the Fair Credit Reporting Act*

6. The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

7. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . ." 15 U.S.C. § 1681(b).

8. The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

9. The FCRA further prohibits consumer reporting agencies from reporting any adverse item of information which antedates the credit report by over seven years. 15 U.S.C. § 1681c.

### *Processing of Credit Information*

10. Equifax regularly receives information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others.

11. These sources are "furnishers" within the credit reporting industry and under the FCRA.

12. Equifax collects information from thousands of furnishers, including Ally.

13. The process by which Equifax receives, sorts, and stores information is largely electronic.

14. Furnishers report credit information to Equifax through coded tapes that are transmitted to Equifax monthly through software known as Metro 2.

15. Equifax takes the credit information reported by furnishers and creates consumer credit files.

16. Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

## *Plaintiff's Credit File and Consumer Reports*

17. In 2005, Plaintiff purchased a Chevy Cavalier with financing through GMAC.

18. In 2006, during a time when Plaintiff was in-between jobs, Plaintiff missed three payments on the GMAC loan and GMAC repossessed the vehicle. Upon information and belief, the first of those missed payments occurred in February 2006.

19. A few months after the repossession, Plaintiff reclaimed the vehicle, made all past due payments to GMAC and brought that loan current.

20. On May 15, 2009, GMAC's banking unit changed its name to Ally Bank.

21. In February 2010, Plaintiff made the final payment on the vehicle to Ally.

22. In 2011, Plaintiff discovered Ally was reporting the loan with a repossession status.

23. Although the loan was on Plaintiff's Trans Union and Experian credit files as "closed," the loan appeared on his Equifax credit file as a "repossession."

24. Between 2010 and 2016, Plaintiff made numerous attempts with Equifax to correct the "repossession" reporting status of the loan.

25. As part of his efforts, Plaintiff had numerous oral conversations and exchanged numerous written documents between and among Ally and Equifax.

26. By reporting the above information to consumer reporting agencies, Ally acts as a "furnisher" under the FCRA.

27. Frequently, Plaintiff has disputed the accuracy of Ally's reporting to one or more consumer reporting agencies, including Equifax.

28. The inaccurate reporting of Plaintiff's Ally auto loan as in a "repossession" status caused Plaintiff to be denied funding for educational loans and those loan denials further caused Plaintiff to incur additional educational costs.

29. The inaccurate reporting of Plaintiff's Ally auto loan also caused Plaintiff's loan application to Bank of America to be denied in June 2016 because the Ally loan was on Plaintiff's Equifax credit report as a "repossession."

## CLAIMS FOR RELIEF

### Count I
### *FCRA Violations Against Ally*

30. This is a claim for violations of the FCRA.

31. Ally furnished credit information about Plaintiff to the consumer reporting agencies.

32. Ally is subject to the FCRA, including those duties set out in 15 USC § 1681s-2(b).

33. At all times, Ally provided inaccurate, misleading and/or incomplete credit information to the consumer reporting agencies about Plaintiff. This inaccurate, misleading and/or incomplete credit information was reported by the consumer reporting agencies to Plaintiff's potential employers and others in a position of evaluating plaintiffs' creditworthiness, credit standing, credit capacity, character and general reputation.

34. Plaintiff has notified one or more consumer reporting agencies of his dispute of the information being reported by Ally. Upon information and belief, a form of Plaintiff's disputes and requests for reinvestigation were forwarded to Ally by one or more consumer reporting agencies.

35. Information was available to Ally that should have, upon a reasonable investigation, informed Ally its reporting was inaccurate, misleading and/or incomplete, including Ally's continued reporting of the repossession status after February 2013, the date after which this adverse item of information could no longer be reported under Section 1681c of the FCRA and by failing for a period of time following Plaintiff's reclamation to report the repossession as reclaimed or reinstated.

36. Ally knows, should know or acts recklessly in not knowing the information Ally furnished regarding the repossession was inaccurate, misleading and/or incomplete.

37. Despite its knowledge that the information being furnished about the incidents was inaccurate, misleading and/or incomplete, Ally repeatedly reported the information and repeatedly verified the information as accurate, knowing that by doing so Plaintiff's creditworthiness and eligibility for employment would be damaged.

38. Ally has taken actions which violate 15 USC § 1681s-2(b) of the FCRA. These actions include, but are not limited to: (a) reporting inaccurate, misleading and/or incomplete information to one or more consumer reporting agencies regarding the incidents; (b) failing to fully, properly or reasonably investigate Plaintiff's requests for reinvestigation; (c) failing to review all information regarding Plaintiff's requests for reinvestigation and/or disregarding information after review; (d) after receiving notice of Plaintiff's requests for reinvestigation, continuing to submit inaccurate, misleading and/or incomplete information to one or more consumer reporting agencies regarding the incidents; (e) failing to modify, delete or permanently block the reporting of inaccurate information regarding Plaintiff which Ally knows to be inaccurate, misleading and/or incomplete; (f) failing to accurately

respond to Plaintiff's requests for reinvestigation made through one or more consumer reporting agencies after receipt of those disputes.

39. Ally knows that the information it provided to one or more consumer reporting agencies was false, inaccurate, misleading and/or incomplete.

40. Because of this conduct, Plaintiff suffered actual damages including loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor and/or potential employer, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

41. The acts and/or omissions of Ally made in violation of the FCRA were willful, entitling Plaintiff to recover the remedies provided in 15 U.S.C. § 1681n.

42. The acts and/or omissions of Ally made in violation of the FCRA were negligently made, entitling Plaintiff to recover the remedies provided in 15 U.S.C. § 1681o.

### Count II
### FCRA Violations Against Equifax

43. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681e(b).

44. Equifax has prepared consumer reports about Plaintiff containing the inaccurate "repossession" status of the Ally auto loan.

45. Equifax has prepared consumer reports about Plaintiff containing the inaccurate "repossession" status of the Ally auto loan long after February 2013, the date by which the adverse repossession status could be properly reported under Section 1681c of the FCRA.

46. Equifax maintained sufficient information, some of which was provided to Equifax by Plaintiff, to conclude that Plaintiff's Ally auto loan should not be reported as in a "repossession" status, that it should have been reported as a repossession reclaimed and that it should not have been reported at all after seven years had passed since the date of Plaintiff's first delinquency which caused the repossession.

47. Equifax has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and Plaintiff's consumer reports in violation of Section 1681e(b) of the FCRA.

48. Equifax has failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and Plaintiff's consumer reports in violation of Section 1681c of the FCRA.

49. Equifax has failed to disclose the complete contents of Plaintiff's credit file(s) to Plaintiff by failing to include in those disclosures the date of first delinquency associated with the repossession status.

50. Plaintiff disputed the accuracy of the Ally tradeline to Equifax but Equifax failed to conduct reasonable investigations into Plaintiff's disputes of the Ally tradeline and failed to comply in processing those disputes with other requirements of Section 1681i of the FCRA.

51. During one telephone conversation between Plaintiff and Equifax representatives, Equifax advised Plaintiff that each time any activity (such as a dispute) occurs regarding a credit reporting issue, the time for which it would have automatically been removed is reset to 10 years from the new activity. This representation by Equifax was not only intentionally misleading and contrary to the FCRA, it was also intended to discourage Plaintiff from continuing to exercise his FCRA rights to dispute the inaccurately reported Ally tradeline.

52. Plaintiff has suffered damages, including the denial or inability to obtain credit and various forms of emotional distress because of the actions and inaction of Equifax.

53. Equifax has negligently violated Section 1681e; alternatively, Equifax has willfully violated Section 1681e.

54. Equifax has negligently violated Section 1681c; alternatively, Equifax has willfully violated Section 1681c.

55. Equifax has negligently violated Section 1681i; alternatively, Equifax has willfully violated Section 1681i.

56. Equifax has negligently violated Section 1681g; alternatively, Equifax has willfully violated Section 1681g.

57. Plaintiff has suffered damages because of these violations for which Plaintiff is entitled to recover under Section 1681o, or, alternatively, Section 1681n.

## JURY DEMAND

58. Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

Plaintiff respectfully requests this Court enter a judgment against Ally and Equifax for negligent and/or willful violations of the FCRA and award Plaintiff actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment and damage to credit reputation; statutory damages; punitive damages; costs and attorney's fees. Plaintiff further requests such other relief as the Court deems just and proper.

October 6, 2016                          Respectfully submitted,

_____
William T. Crowder
Corey D. McGaha
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223-0043
(501) 205-4026
Fax (501) 367-8208
wcrowder@crowdermcgaha.com
cmcgaha@crowdermcgaha.com

G. John Cento
CENTO LANE, LLC
334 N. Senate Avenue
Indianapolis, IN 46204
(317) 908-0678
ceno@centolaw.com